UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-323-GWU

WANDA BLANTON,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to
      Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Blanton

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

3

Blanton

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Blanton

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Blanton

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Blanton

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wanda Blanton, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of diabetes mellitus and bilateral carpal tunnel syndrome.  (Tr. 16).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Blanton retained the residual functional capacity to perform her past relevant work, and therefore was not entitled to benefits.  (Tr. 17-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person with the plaintiff's work history and ninth grade education could perform any jobs if she were capable of "medium" level exertion and had "a slight restriction in her ability to handle, but it's not to a degree that she can only do it occasionally, just occasionally is a problem for her."  (Tr. 307-8).  The VE responded that such a person could

Blanton

return to the plaintiff's past work as a housekeeper, biscuit maker, and cook.  (Tr. 308).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Blanton alleged disability beginning June 19, 2002 due to diabetes, high blood pressure, arthritis, carpal tunnel syndrome, "prior cancer," vision problems, and limited education.  (Tr. 69).  She testified at the hearing that her diabetes was not under control despite using insulin, and this resulted in blurry vision and feeling of sickness and weakness.  (Tr. 300, 303).  Her hands were numb and tingly due to carpal tunnel syndrome as well as diabetic neuropathy, and caused her to drop things.  (Tr. 300, 304). She could not afford to have carpal tunnel surgery.  (Tr. 301). Her blood pressure was not under control despite medication.  (Id.). She had a remote history of an operation for breast cancer, but admitted there was no evidence of recurrence.  (Tr. 305).  She was also being treated for depression at the local Comprehensive Care Center (CCC), and found the medication and counseling somewhat helpful.  (Tr. 305-6).

Medical records showed that Mrs. Blanton was briefly hospitalized in July of 2002, shortly after her alleged onset date, to convert her from oral to injectable medication for diabetes.  (Tr. 112). At a consultative examination by Dr. Stephen

8

Blanton

Lamb in August, 2002, Mrs. Blanton reported that her glucose would run up to 400, but she had no focal numbness to the best of her knowledge. (Tr. 121). She also described carpal tunnel syndrome, although there had been no formal testing at that time. She had pain and numbness in her hands and shoulders and swelling in her knees, but was able to stand and walk for one hour. It was easier for her to sit. She was able to carry a 12 pack of drinks. (Id.). Dr. Lamb found the plaintiff to be somewhat obese, but her physical examination was in most respects normal. Mrs. Blanton's blood pressure was 128/68, vision was 20/20 with glasses, and there was no clubbing or cyanosis, although there was a "trace" of pedal edema. (Tr. 123). There were no sensory deficits, deep tendon reflexes were symmetrical, she had a normal grip with slightly calloused hands, a normal range of motion, and negative straight leg raising. Dr. Lamb diagnosed diabetes and carpal tunnel syndrome "by history," but concluded that Mrs. Blanton had only a mild impairment for lifting and carrying. (Id.).

A state agency physician, Dr. S. Mukherjee, reviewed the evidence at this point and concluded that Mrs. Blanton did not have a "severe" physical impairment. (Tr. 182).

Subsequently, Mrs. Blanton's family physician, Dr. Jai Devapiran, referred her to an orthopedist, Dr. Ronald Dubin, for an evaluation of complaints of numbness, tingling, and stiffness in both hands. (Tr. 278). Dr. Dubin found some diffuse

9

Blanton

swelling, but no evidence of carpal tunnel syndrome, and an x-ray of the left hand was essentially normal.  (Tr. 161).  He believed that her diagnosis was consistent with peripheral neuropathy due to insulin-dependent diabetes, which should be controlled with medication. (Id.). However, after the plaintiff continued to complain, Dr. Devapiran referred his patient to a neurologist, Dr. Jalil Shojaei.  (Tr. 276).  Dr. Shojaei's  examination did show some decreased sensation for light touch and vibration in both legs and decreased Achilles reflexes, but he found normal strength and a normal gait.  (Tr. 246-7).  He obtained EMG/NCV testing which showed "moderate" median neuropathy (carpal tunnel syndrome) in the left wrist and "moderate to severe" median neuropathy in the right wrist.  (Tr. 245).  In addition to carpal tunnel syndrome, Dr. Shojaei diagnosed vitamin B12 deficiency, and advised monthly B12 injections.  (Tr. 242-3).  He prescribed medication, advised the plaintiff to wear wrist splints, and advised a referral to a neurosurgeon for consideration of carpal tunnel release surgery.  (Tr. 243).  No functional restrictions were given.[1]

Dr. Devapiran noted in January, 2004 that the plaintiff's diabetes was under inadequate control "secondary to some noncompliance," and requested that the plaintiff "tighten" her diet, lose more weight, and take her medications

_____

[1]Another specialist, Dr. Mitchell Carl, evaluated the plaintiff after a blood test showed "polyclonal gammopathy," but his examinations were essentially normal and he cleared the plaintiff to begin hormonal therapy following a mammogram and a bone density study.  (Tr. 251-7).  No functional restrictions are suggested.

"appropriately."  (Tr. 274).  One month later, he reported that Mrs. Blanton's "glyco hgb" done on her last visit had come back "uncontrolled," and that she "continues to have significant crippling peripheral diabetic neuropathy."  His examination did not list any specific abnormalities, however.  (Tr. 273).

On appeal, the plaintiff asserts that the ALJ erred in finding that she was capable of performing medium work activity with only a slight limitation in handling, but does not point to any specific medical opinion giving greater limitations. Assuming, arguendo, that Dr. Devapiran's January, 2004 description of "crippling" peripheral diabetic neuropathy was intended to be a statement of disability, although the plaintiff has not specifically raised this point, it would not have been binding on the ALJ given the physician's indication that the plaintiff was not compliant with treatment at the time.  Accordingly, this portion of the administrative decision is supported by substantial evidence.

The plaintiff also contends that the ALJ committed error in failing to find that she had a "severe" mental impairment.

Treatment notes from the CCC showed that Mrs. Blanton was initially seen in May, 2003 with complaints of sadness, decreased energy, crying, irritability, and insomnia.  (Tr. 174).  She denied any current suicidal thoughts.  The staff psychiatrist, Dr. S. Raza, described Mrs. Blanton's mood as anxious, but she was alert and oriented and her insight and judgment were fair. He diagnosed a

Blanton

depressive disorder with a current Global Assessment of Functioning (GAF) score of 55. (Tr. 176).  A GAF score between 51 and 60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision) (DSM-IV-TR), p. 34.  Dr. Raza prescribed medication and counseling, and at her next two visits, Mrs. Blanton reported that she had improved in all areas.  (Tr. 165, 168).  In July, 2003, she reported an increase in anxiety and depression, apparently related in part to a family member who was in poor health.  Dr. Raza increased her dosage of medication, but did not suggest a change in functional capacity. (Tr. 162).

Annette Freel, a licensed psychological associate, conducted a consultative mental status examination of Mrs. Blanton in September, 2004.  (Tr. 279).  Mrs. Blanton stated that she had been attending CCC for two years for depression and anxiety, and was seeing the current staff psychiatrist, a Dr. Siddiqui, once a month, and also seeing a counselor once a month.  (Tr. 281).  She stated that she felt "down and low," and "a little bitter."  (Id.).  Although her facial expression was "sad," she described activities such as attending church twice a week and regular interaction with friends and family.  (Tr. 281-2).  Her intelligence appeared to be borderline and insight "poor," but abstract reasoning was normal and judgment was good.  (Tr. 282).  The Rey 15 item memory test indicated poor effort, and IQ testing, which produced scores below 70, was said to be invalid due to low effort.  (Id.).

12

Blanton

Achievement testing showed a seventh grade reading ability and a sixth grade arithmetic ability.  (Tr. 283).  Ms. Freel diagnosed an adjustment disorder with depressed mood, and also assigned a GAF score of 55.  (Id.).  She completed a mental medical assessment form indicating that the plaintiff had at least a "fair" (defined as "limited but satisfactory") or better ability to make all occupational, performance, and personal/social adjustments.  (Tr. 286-7).

The plaintiff objects to the ALJ's conclusion that the evidence showed no more than mild limitations from psychological causes, and, thus, that she did not have a "severe" mental impairment.  (Tr. 16).  The plaintiff alleges that a GAF of 55, given by both the treating source and the consultant, is inconsistent with no limitation of functioning, and suggests that the Freel report should be disregarded and a new consultative examination with a licensed clinical psychologist obtained under the provisions of 20 C.F.R. Section 404.1519a(2)(b).  However, this section of the regulations, read as a whole, and in conjunction with the preceding Section 404.1519, gives the Commissioner considerable leeway to determine when it is necessary to purchase an additional consultative examination.  Under the circumstances of this case, in which the treating source indicated improvement on medication and with counseling after giving the initial GAF of 55, the lack of additional treatment records from the CCC although the plaintiff apparently continued to be treated at the facility for over a year after the date of the most recent

13

Blanton

records made available to the ALJ, and, not least, in view of the poor effort apparently made by the plaintiff during the consultative examination, the court finds no reversible error.  Simply put, the plaintiff failed to carry her burden of showing that she was incapable of returning to her past relevant work.

Counsel for the plaintiff has also filed a motion to remand under Sentence Six of 42 USC Section 405(g) on the basis of new and material evidence.  The statute provides that a district court may remand a case for additional proceedings if it is found that the evidence at issue is both (1) "new" and "material," and (2) that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." Hollon ex rel. Hollon v. Commissioner of Social Security, 447 F.3d 477, 482 (6th Cir. 2006). The new evidence consists of additional records from Dr. Devapiran dated between January and August, 2006, more than a year after the ALJ's December 22, 2004 decision. It shows that Mrs. Blanton was hospitalized for bronchitis and uncontrolled blood sugar for two days in January, 2006, but she was discharged in improved condition with no functional limitations reported. Docket Entry No. 12, pp. 10-15. It was again noted that she was not being compliant with diet and medications. Id., pp. 3, 7. An MRI of the lumbar spine on April 17, 2006 showed degenerative disc disease with a moderate herniation at L5-S1. Id., p. 8. However, a physical examination showed negative straight leg raising, no significant motor deficits, and only "nonspecific lower lumbar tenderness." Id., p. 3.

14

Blanton

Although the evidence is "new" in the sense that it did not exist at the time of the administrative proceeding, it is not "material" because there is no reasonable probability that the ALJ would have reached a different conclusion had it been available.  The evidence establishes that the plaintiff continued to be noncompliant with her diabetic diet and medication, and, although she was diagnosed as having a herniated lumbar disc, there is no proof that this condition existed before the ALJ's decision, or that it resulted in any determinable functional limitations. Therefore, the new evidence does not meet the requirements for remand.

The decision will be affirmed.

This the 2nd day of May, 2007.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

15